UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| MacDermid, Incorporated, | |
| *Plaintiff*, | |
| | |
| v. | Civil No. 3:07cv1566 (JBA) |
| | |
| Raymond Selle and Cookson Group plc, | |
| *Defendants*. | |

**RULING ON MOTION FOR CONTEMPT**

In this contentious litigation involving industry competitors and employment covenants, Plaintiff MacDermid, Incorporated ("MacDermid") has moved for entry of an order finding Defendant Raymond Selle in contempt of this Court's orders dated March 4 and March 31, 2008. As explained below, the Court finds Selle in contempt of these orders and extends the terms of the injunction order accordingly.

**I.   Background[1]**

MacDermid's current Motion for Contempt [Doc. # 113] stems from the Court's order of March 4, 2008, preliminarily enjoining Selle as follows:

1.   Raymond Selle is enjoined from being employed by any entity—including Enthone, Inc., Cookson Electronics, and/or Cookson Group plc—engaged in any business competitive with MacDermid's advanced surface finishing business with which Selle was involved during the final three years of his employment with MacDermid in Brazil. This injunction shall remain in effect until the earlier of September 10, 2008 or further order of this Court.

2.   Raymond Selle is also enjoined from disclosing, using, or misappropriating any of MacDermid's confidential and/or

---

[1] A more complete summary of the factual background is provided in the Court's preliminary injunction ruling dated March 4, 2008. *See MacDermid, Inc. v. Selle*, 535 F. Supp. 2d 308 (D. Conn. 2008).

> proprietary information—including customer lists, partial chemical formulations, product data sheets, customer pricing and sales data, and project development and strategic planning—however acquired during his employment with MacDermid.

(Ruling on Mot. Prelim. Inj. [Doc. # 97] at 17.) On March 19, 2008, MacDermid moved for contempt. After oral argument, and (as the parties requested) construing this motion as a request for clarification, the Court issued a further order which read, in relevant part:

> [In the preliminary injunction order, the] Court specifically identified Enthone, Inc., among others, as such an entity [competitive with MacDermid] by whom Selle was enjoined from being employed. However, it is the Court's declination to impose a worldwide preliminary injunction, which was not part of the injunctive order itself, that has become a source of dispute in the parties' interpretation of the Order. To clarify, the Court did not construe the contractual non-competition provisions narrowly to preclude worldwide application, it merely declined to impose the preliminary injunction worldwide based on the evidentiary record before it. To the extent that this declination to issue a worldwide injunction has been a basis for differing interpretations of the order, the Court clarifies its meaning as follows.
>
> Because Enthone competes with MacDermid in Brazil and South America in the areas in which Selle was formerly employed by MacDermid, Enthone is a proscribed employer for Selle for the duration of the non-compete period. However, Selle is not restricted by the terms of the preliminary injunction from employment with an employer, competitive with MacDermid elsewhere in the world, so long as that employer has no competitive business in Brazil. It is to this situation—an advanced surface finishing competitor without Brazilian business—that the second prong of the injunction—enjoining him "from disclosing, using, or misappropriating any of MacDermid's confidential and/or proprietary information"—is directed.

(Ruling on Mot. Contempt/Clarification [Doc. # 106] at 1–2.)

MacDermid now once again seeks an order finding Selle in contempt. MacDermid asks the Court to impose (unspecified) monetary sanctions, to extend the March 4 injunction order, and to award MacDermid fees and costs. The evidence on which

2

MacDermid's motion is based includes Selle's e-mail correspondence which MacDermid describes as discussing "specific customers, prospective customers, sales, and business matters of Cookson/Enthone in Brazil," referencing "customers of MacDermid with which Selle worked during his employment by MacDermid," and demonstrating that "Selle was engaged in the business of Cookson/Enthone" in violation of the Court's previous order. (Pl.'s Mot. at 3.) MacDermid also presented testimonial evidence at a hearing held in June and July, 2008.

## II. Legal Principles

"A court's inherent power to hold a party in civil contempt may be exercised only when (1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989). The first of these elements is based on part on the requirement in Federal Rule of Civil Procedure 65(d)(1) that an injunction order must "state the reasons why it issued," "state its terms specifically," and "describe in reasonable detail . . . the act or acts restrained or required." In other words, "an injunction [must] be specific and definite enough to apprise those within its scope of the conduct that is being proscribed." *In re Baldwin-United Corp.*, 770 F.2d 328, 339 (2d Cir. 1985). MacDermid argues that it has satisfied the three elements: the Court's orders of March 4 and March 28 are clear and unambiguous; the proof of non-compliance as demonstrated by the Selle-Copeland e-mails is clear and convincing; and Selle's conduct shows that he has not diligently attempted to comply with the orders.

A "district judge, sitting in equity, is vested with wide discretion in fashioning a

remedy" after a finding of civil contempt. *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979). If "the plaintiff has proved that [it] has suffered harm because of a violation of the terms of an injunction, compensatory damages are appropriate." *Id.* A court's discretion in this context "permits, as a coercive device, the imposition of a fine." *Dickinson v. United States*, 763 F.2d 84, 88 (2d Cir. 1985). In addition, although "willfulness may not necessarily be a prerequisite to an award of fees and costs, a finding of willfulness strongly supports granting them." *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996). Within these very broad parameters, the Court has wide discretion to impose sanctions against Selle.

### III. Discussion

Selle does not dispute that the relevant orders were clear and unambiguous. (Selle's Opp'n [Doc. # 141] at 6–7.) He concedes that, "[a]s a result of the Court's ruling on the Motion for Contempt/Clarification issued on March 28, 2008, it was clear that Selle was prohibited from working for Enthone in any capacity." (*Id.* at 7.) The Court's orders are also specific and definite in naming Cookson Electronics and Cookson Group plc as within the class of prohibited employers. The parties dispute whether Selle clearly and convincingly violated this Court's orders and whether he did so willfully.

Through exhibits and testimony, MacDermid established the following facts. After March 4, 2008, Selle continued to communicate with Terrence Copeland, who was Selle's boss at Enthone and had been his supervisor at MacDermid. (Tr. 5:7–11.) Selle's explanation for these communications was that he wanted "to keep in contact to make sure that [he] still had a job" in Brazil (*id.* at 5:14–17), but the context was far broader. Selle offered to help Copeland introduce a particular chrome process in Asia. (Pl.'s Ex. 3.)

4

Referencing the remaining duration of the injunction order, Selle promised Copeland that "[s]ix months will go by fast and during this period I assure you I will continue to create value. On Thursday, September 11th[, after expiration of Selle's one-year non-compete covenant with MacDermid,] a major war will break out." (*Id.*) Throughout the period of the injunction, Selle has received pay and benefits from prohibited employers; until March 2008, this was Enthone, after which "it was changed to Cookson Electronics." (Tr. 11:16–18.) Selle explained that he was paid by Cookson Group until April 2008, and then subsequently by a sister company to Enthone known as Fry's or Alpha Metals ("Alpha"). (*Id.* 13:11–21.) Copeland acknowledged that this change was the result of his desire to "find ways of making sure that [Selle] was taken care of in Brazil," given that Selle "was an employee for the company and we were trying to make sure that he was gainfully employed and he got paid." (*Id.* 79:22–25.) Copeland described this change as involving "a lot of payroll issues." (*Id.* 80:1.) Copeland also clarified that Cookson Electronics is "sort of like a holding company in Brazil for both companies," meaning Alpha and Enthone, and that "they share HR, for example, and accounting and stuff like that." (*Id.* 80:18–81:1.) In addition, Alpha and Enthone are located in the same facility in Brazil, and share the same cafeteria and parking lot. (*Id.* 142:23–143:6, 166:1–14.) After being transferred to the Alpha payroll, Selle's access within this facility was not restricted in any way (*id.* 172:21–25), and his supervisors remained largely the same (*id.* 76:3–81:11).

Selle's e-mail correspondence from this period is further revealing of the absence of diligence to reasonably and diligently comply with his court-ordered obligations. When he had a problem with his paycheck on March 14, he contacted Copeland for assistance, and also discussed with Copeland his thoughts about certain process technologies. (Pl.'s Exs. 6,

5

8, 17.) In a message dated April 1, 2008, Copeland advised Selle: "We will stay off the cookson email system for most of our correspondences. I will still auto forward news letters etc via cookson . . . . Line em up! It won't be long." (Pl.'s Ex. 18.) Implausibly, Copeland explained that what he meant by this last line was "basically keep your chin up, it won't be long." (Tr. 141:7–12.) When the Court asked Copeland directly about this, he denied that he meant to refer to clients, but rather "it was line up your strategies in your mind." (*Id.* 165:15–18.) Also on April 1, Selle told Copeland about his phone conversation with a former MacDermid-affiliated salesman named Sergio in which they discussed the latest news regarding certain South American customers. (Pl.'s Ex. 18.) When asked about this e-mail message, Selle explained:

> [W]hen I originally came to Enthone, one of the things I did was I pushed Sergio real hard in trying to be more aggressive and to focus on certain opportunities and targets, and Sergio was all excited that he received a trial order from Multek on a certain product and he called me and gave me the information, and when I look back on it now I shouldn't have did—I shouldn't have wrote the e-mail the way I did, but I passed that information along to [Copeland] just as being a team player.

(Tr. 30:23–31:7.) Selle later followed up about customer information on April 7. (Pl.'s Ex. 22.)

Justifying his conduct as compliant with the Court's orders, Selle asserts in his surreply brief that he was "willing[] to work elsewhere" for the duration of the injunction period, and to that end "accepted an assignment with Fry's/Alpha Metals, completely removed from the advanced surface finishing business anywhere in the world." (Selle's Sur-Reply [Doc. # 153] at 3.) But Selle's attempt to draw a distinction between Alpha and the

other Cookson entities is both disingenuous and unpersuasive.[2] The undisputed testimony established that, after purportedly discontinuing his employment with Enthone following the Court's explicit clarification that Enthone was a prohibited employer, Selle nonetheless continued to receive the same pay and benefits, reported to the same facility which Alpha shares with Enthone, and was supervised by the same personnel. Selle justifies these arrangements by arguing that there is no evidence which shows that his physical work location and personnel relationships place MacDermid's trade secrets significantly at risk. This misses the point. The March 4 injunction order enjoined Selle from working for any entity which competed with MacDermid's surface-finishing business in Brazil and specifically included "Enthone, Inc., Cookson Electronics, [and] Cookson Group plc" within that prohibition. By working within the Cookson Electronics family, Selle continued to violate the terms of the injunction.

Selle's testimony that he sought to receive the same steady stream of income and benefits, desired to "create value" for Cookson Electronics or its entities in return, and remained in contact with Copeland in relation to his business interests clearly and convincingly shows that Selle was not diligently attempting to comply with the Court's orders in a reasonable manner. Rather, his concept of compliance was to be employed by a Cookson Electronics entity in Brazil, biding his time until his one-year restrictive covenant with MacDermid expired. Not only are Selle's and Copeland's innocent characterizations of the nature and purpose of their correspondence simply not credible, but by their admissions, Selle continues to be employed by a Cookson Electronics entity with little more

---

[2] The Court also incorporates by reference its discussion of the various corporate entities in the preliminary injunction ruling. 535 F. Supp. 2d at 316–17 & n.6.

than a payroll entry change from Enthone. Taken together and in context, this willful conduct by Selle constitutes contempt and warrants sanctions.

Accordingly, MacDermid's motion [Doc. # 113] is granted, and Copeland's motion to quash [Doc. # 123] is denied as moot. It is hereby ORDERED that the injunction entered against Raymond Selle shall remain in effect until February 23, 2009 or further order of this Court. MacDermid is entitled to its fees and costs incurred in connection with this motion, and shall submit the appropriate documentation by October 1, 2008.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 9th day of September, 2008.